IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LUKE JOHN SCOTT,<br><br>Plaintiff,<br><br>vs.<br><br>KALAH PAISLEY, et al.,<br><br>Defendants. | CV 19–63–GF–DLC–JTJ<br><br>ORDER |

Before the Court is Plaintiff Luke John Scott's ("Scott") pro se Complaint, alleging that Defendants violated his rights under the U.S. and Montana Constitutions and the Indian Civil Rights Act ("ICRA"). (Doc. 2.) Because Scott is a prisoner proceeding pro se and in forma pauperis, his case was referred to United States Magistrate Judge John Johnston, who screened the Complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). *See* D. Mont. L.R. 72.2(a)(1).

Judge Johnston entered his Findings and Recommendations ("F&R") on February 4, 2020. (Doc. 7.) There, he recommended that the Court dismiss all Defendants except Overby, Furda, Lanthorn, John, and Knowlton. (*Id.*) And, since a favorable determination on the claims against those defendants could imply the invalidity of a conviction in Scott's pending federal criminal cases, Judge

-1-

Johnston recommended staying them and administratively closing this matter. (*Id.*)

## LEGAL STANDARD

Scott timely objected to the F&R on February 19, 2020. (Doc.12.) Accordingly, Scott is entitled to de novo review of those findings to which he specifically objects. 28 U.S.C. § 636(b)(1)(C). Absent objection, the Court reviews the Magistrate Judge's findings and recommendations for clear error. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error is "significantly deferential" and exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

## DISCUSSION

Scott alleges that, beginning on July 7, 2017, tribal authorities—through "sho[dd]y [and] prejudicial investigation techniques and discriminatory charging and prosecuting decisions"—arrested and held him on rape and strangulation charges. (Doc. 2 at 6, 17). Although the tribal charges were ultimately dismissed, Scott asserts that they formed the basis of one of the federal charges he currently faces. (*Id.* at 6, 17.) In a separate matter arising from events that took

place on the Fort Peck Indian Reservation in 2019, the United States charged Scott with Assault Resulting in Serious Bodily Injury and Felony Child Abuse. (*Id.* at 15; *see also United States v. Scott*, CR–19–29–GF–BMM (D. Mont. Apr. 19, 2019).) Invoking the Court's jurisdiction under U.S.C. § 1983 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), Scott alleges that Defendants committed constitutional and statutory violations against him at various points in the lives of these pending cases. Judge Johnston determined that, apart from Scott's allegations against three FBI agents and two Bureau of Indian Affairs ("BIA") employees, his allegations fail to state claims upon which relief may be granted.

Reviewing those findings and recommendations to which Scott does not object—including those to which he concedes—the Court reviews for clear error and finds none. That is, the Court agrees with both Judge Johnston and Scott that federal public defenders do "not act under color of federal law" for purposes of a *Bivens* action; therefore, Scott's claims against Ness and Hoovestal "suffer[] from a fatal jurisdictional defect which requires dismissal." *Cox v. Hellerstein*, 685 F.2d 1098, 1099 (9th Cir. 1982). Additionally, as Judge Johnston found, Scott's claims against the FBI agents (Overby, Furda, and Lanthorn) and the BIA caseworkers (John and Knowlton) raise issues that will likely be presented in his

pending criminal cases. Therefore, the Court agrees with and adopts Judge Johnston's recommendation to stay these claims "until the criminal case . . . is ended." *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007). Finally, the Court agrees that the only remedy available to Scott under ICRA is a federal habeas petition, to which he is ineligible as he is not in tribal custody. *Tavares v. Whitehouse*, 851 F.3d 863, 865–66 (9th Cir. 2017).

Scott lodges four specific objections. First, he objects to Judge Johnston's recommendation to dismiss Federal District Court Judges Morris and Haddon based on absolute judicial immunity. (Doc. 12 at 2–7.) Second, and similarly, he objects to Judge Johnston's determination that prosecutorial immunity bars his claims against Defendants Paisley, Alme, Mercer, and Harper-Suek. (*Id.* at 7–8.) Third, Scott argues that Judge Johnston erred in finding that the tribal Defendants are not federal defendants; accordingly, he objects to the recommendation that the Court dismiss them on this basis. (Doc. 12 at 8–11.) Fourth, Scott objects to Judge Johnston's recommendation to dismiss various defendants who he listed in the "Parties" section of his Complaint, but against whom he made no factual allegations. (Docs. 12 at 11–12; 13 at 15.) Reviewing de novo, the Court will address each of Scott's objections in turn.

## I. Judicial Immunity

Scott alleges that now-Chief District Court Judge Brian M. Morris violated his First and Fourth Amendment rights. (Doc. 2 at 15, 18.) He claims that District Court Judge Sam E. Haddon violated his Eighth Amendment guarantee against cruel punishment. (*Id.* at 27.) And, he asserts that both Judges violated his Fourteenth Amendment rights. (*Id.* at 36, 38.) Scott's theory of liability on each claim, it appears, is that both Judges committed constitutional violations by way of presiding over and "allowing" unconstitutional misconduct in their respective courtrooms. (*See, e.g.,* Doc. 2 at 36.)

"Judges . . . are absolutely immune from damage liability for acts performed in their official capacities." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (citation omitted). Whether a judge acts in his "judicial" capacity for immunity purposes "relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 360 (1978)).

Here, Scott objects to Judge Johnston's finding that judicial immunity bars his claims against Judges Haddon and Morris, because "knowingly, maliciously, and negligently [targeting] a protected class of citizens is not a judicial function or

it's (sic) equivalent." (Doc. 12 at 2 (alteration in original).) However, while he consistently recites adverbs like "knowingly" and "maliciously" throughout his claims against the Judges, Scott fails to allege that any of their purported misconduct took place outside their respective judicial capacities. And, although Scott impugns the propriety of the Major Crimes Act ("MCA"), 18 U.S.C. § 1153 (Doc. 12 at 3), his statutory attack fails to demonstrate that either of the Judges acted outside the scope of their judicial roles by presiding over cases wherein the MCA provided federal jurisdiction. Furthermore, asserting facts that are "merely consistent with" a defendant's liability—like baldly asserting that purported misconduct was malicious—stops short of the plausibility standard for pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court cannot narrow the scope of judicial immunity on Scott's behalf. Therefore, reviewing de novo, the Court agrees with Judge Johnston's recommendation to dismiss Scott's claims against Judges Morris and Haddon based on absolute immunity. Accordingly, the Court overrules Scott's objection.

## II. Prosecutorial Immunity

For the same reasons that he argues judicial immunity should not apply here, Scott argues that immunity should not shield the Defendants Paisley, Alme, Mercer, and Harper-Suek (together, "Prosecutor Defendants") from liability.

(Doc. 12 at 8.) Further, he argues that the Prosecutor Defendants are "more guilty than Federal District Judges who part[ake] in the egregious prosecution of Natives with the racist statute [MCA]." (*Id.*)

Prosecutorial immunity applies when a prosecutor performs functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Judge Johnston found, and Scott does not dispute, that the conduct alleged against the Prosecutor Defendants was intimately associated with the judicial phase of the criminal process. (Docs. 7 at 1; 12 at 7–8.) Instead, Scott posits that any prosecution pursuant to a "racist statute" inherently falls outside the scope of any legitimate prosecutorial function. (Doc. 12 at 8.) However, that Scott disagrees with the laws that gave rise to the charges against him is inapposite. The question is whether the prosecutors were performing functions intimately associated with the judicial phase of the criminal process, which they undisputedly were.

Accordingly, reviewing de novo, the Court concludes that Scott's claims against the Prosecutor Defendants fail. Therefore, it overrules Scott's objection.

## III. Tribal Officers

Scott objects to Judge Johnston's recommendation to dismiss the following Defendants (hereafter, "Tribal Defendants"): Terry Boyd, Dustin Kuipers, Marvin

Youpee, Imagene Lilley, LaFonne Copenhaver, Rick Kirn, Floyd Azure, Scott Sciford, Sean RedBoy, Kenny Trottier, Coretta GrayBear, Ron Jackson, Juanita Headdress, Lewis Matthews, Kyle Buck, Cheryl Stiffarm, David Archamble, Mike Shields, Unknown Fort Belknap Jailer, Chelby Brugh, Fort Peck Jailer Walker, Rick Reyes, Laine Littleowl, Raul Figuroa, Loren Eagle, Thomas Jones, Jailer DeMill, Deshanna RedEagle, Ricky BetsHisMedicine, Tom Clark, Orin Cantrell, Jason Hackleman, Nurse Francis, and Unknown Tribal Prosecutor. (Doc. 12 at 8.) He argues that the Magistrate Judge erroneously concluded that "these Tribal Officials are acting under the color of tribal law and are therefore not 'Federal officials,' and are immune from suit under 42 U.S.C. § 1983 or *Bivens*." (*Id.* at 8–9.) However, Scott's assessment that Judge Johnston found *immunity* for the Tribal Defendants indicates that he misreads the F&R on this point.

The question here is not one of immunity, but instead concerns whether Scott has stated a valid cause of action. "To maintain an action under section 1983 against . . . individual defendants, [a plaintiff] must . . . show: (1) that the conduct complained of was committed by a person acting under the color of *state* law; and (2) that this conduct deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Evans v. McKay*, 869 F.2d 1341, 1347 (9th Cir. 1989) (emphasis in original). Accordingly, "tribal

defendants can [] be held liable under § 1983 only if they were acting under color of *state*, not tribal, law." *Pistor v. Garcia*, 791 F.3d 1104, 1114–15 (9th Cir. 2015) (emphasis in original). Analogously, to maintain an action under *Bivens*, a plaintiff must show that the conduct complained of was committed by a person acting under the color of *federal* law and resulted in a constitutional violation. *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Scott's Complaint does not allege that any Tribal Defendant acted under the authority of anything other than tribal law.

Accordingly, the Court agrees with Judge Johnston's determination that Scott fails to state a claim under either § 1983 or *Bivens* against the Tribal Defendants regarding his arrests, prosecutions, incarcerations, and treatment in tribal courts and tribal jails. The Court overrules his objection as it relates to the Tribal Defendants.

## IV. Remaining Parties

Scott objects to Judge Johnston's recommendation that the Court dismiss all defendants listed in the "Parties" portion of his Complaint, but against whom he asserts no factual allegations. He states that he listed all the parties "in the same exact manner with every claim addressed to each specific Defendant placed in the appropriate section to which they belonged." (Doc. 12 at 11–12.) Alternatively,

he urges the Court to let him amend his Complaint. (*Id.*)

The Court agrees with Judge Johnston that Scott failed to allege any facts to support claims against Defendants Mary Lou Azure, Curtis Fox, Valley County Detention Center Warden, Valley Counter Detention Center Officer, Jimmy Summers, Lynda Jollie, Unknown Fort Belknap E.R. Doctor, Jonah Redenger, John Wetsit, and Patricia Toaves (collectively, "Remaining Defendants"). However, the Court agrees with Scott that it should allow him to amend his Complaint: "[d]ismissal of a *pro se* complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) (quoting *Schucker v. Rockwood,* 846 F.2d 1202, 1203–04 (9th Cir. 1988)). It is far from clear—since Scott asserts no factual allegations—that the deficiencies related to the Remaining Defendants could not be cured by amendment.

So, while the Court agrees with Judge Johnston that Scott fails to allege facts to support claims against the Remaining Defendants, it rejects his recommendation to dismiss them at this juncture. That is, the Court will allow Scott to cure the Complaint's defects as they relate to the Remaining Defendants. However, the Court cautions Scott that this allowance is not an invitation to amend his Complaint through the "throw-spaghetti-at-the-wall-to-see-what-sticks" method.

Any amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint by reference. Once Scott files an amended complaint, it replaces the original complaint, and the original complaint no longer serves a function in the case. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). If Scott fails to use the court-approved form, the Court may strike the amended complaint and recommend the dismissal of the Remaining Defendants <u>with prejudice</u>. Scott may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

The amended complaint must consist of short, plain statements telling the Court: (1) the rights Scott believes were violated; (2) the name of the defendant(s) who violated the rights; (3) exactly what <u>each</u> defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of Scott's rights; (5) when the alleged actions took place; and (6) what injury Scott suffered because of that defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976).

Scott must repeat this process for each Remaining Defendant. He must provide specific factual allegations for each element of each of his claims and must state with specificity to which defendants each claim applies. If Scott fails to

affirmatively link the conduct of a defendant with an injury suffered, the allegation against that defendant will be dismissed for failure to state a claim.

Accordingly, while the Court overrules Scott's objection as it relates to Judge Johnston's finding on the Remaining Defendants, it sustains his objection regarding the appropriate path forward. Scott may amend his Complaint as it relates to the Remaining Defendants.

**ORDER**

Reviewing de novo where Scott specifically objects and for clear error where he does not, IT IS ORDERED that the Court ADOPTS Judge Johnston's FINDINGS (Doc. 7) IN FULL.

Additionally, IT IS ORDERED that the Court ADOPTS Judge Johnston's RECOMMENDATIONS NUMBERED (1) AND (3) IN FULL.

IT IS FURTHER ORDERED that THE COURT REJECTS Judge Johnston's RECOMMENDATION NUMBER (2) and SCOTT IS GRANTED LEAVE TO AMEND HIS COMPLAINT pursuant to the Court's instructions as it relates to the Remaining Defendants. **On or before April 30, 2020, Scott may file an amended complaint on the form to be provided by the Clerk of Court's Office.**

DATED this 31st day of March, 2020.

/s/ Dana L. Christensen
Dana L. Christensen, District Judge
United States District Court