IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LUKE JOHN SCOTT, SR.,<br><br>Plaintiff,<br><br>vs.<br><br>KALAH PAISLEY, et al.,<br><br>Defendants. | CV 19-00063-GF-DLC-JTJ<br><br>ORDER |

This matter is before the Court on a civil rights action filed by Plaintiff Luke John Scott, Sr. ("Scott"). Scott was previously granted leave to proceed in forma pauperis. (Doc. 7.)

As explained below, Scott fails to state a claim for relief and raises claims that are barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). The amended complaint will be dismissed.

## I.      Screening Analysis

Scott is a prisoner proceeding in forma pauperis so the Court must review his Complaint. *See* 28 U.S.C. § 1915 and § 1915A. These provisions require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to

1

state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* Sections 1915A(b) and 1915(e)(2)(B).

## II.     Procedural History

A previous order was entered dismissing the bulk of the Defendants named in Scott's original complaint but allowing him the opportunity to file an amended complaint in an effort to cure the identified deficiencies. *See generally*, (Doc. 13.) Scott was advised that he was precluded from changing the nature of his suit by adding new and unrelated claims in his amended complaint. (*Id.* at 11)(*citing George v. Smith*, 507 F. 3d 605, 607 (9th Cir. 2007).The proceedings were then stayed, pursuant to *Wallace v. Kato*, 549 U.S. 384 (2007), pending the resolution of Mr. Scott's criminal cases.

On March 2, 2023, this Court issued a show cause order directing Mr. Scott to explain why the matter should not be dismissed based upon his failure to prosecute. (Doc. 19.) The Court noted that Scott had been directed to provide updates to the Court every six months during the pendency of the stay, *see e.g.*, (Doc. 7 at 14; Doc. 13 at 12), but had failed to do so. (Doc. 19 at 3.)

Scott responded by explaining that his appeal was still pending and had been delayed due to a change in counsel. (Doc. 20 at 2.) Scott advised the Court he would file a motion to amend his complaint once he had an opportunity to do so,

but that he had been consumed with his direct appeal. (*Id.* at 3.)

On October 6, 2023, in a consolidated appeal, the Ninth Circuit affirmed Scott's convictions, but remanded the matters for resentencing. *See United States v. Scott*, 2023 WL 6534361, *1 (9th Cir. Oct. 6, 2023). On February 6, 2024, following resentencing, amended judgments were entered in both of Scott's criminal cases. *See US v. Scott*, Cause No. CR-19-29-GF-BMM, Amd. Judg. (D. Mont. Feb. 6, 2024)(Scott committed to the BOP for 87 months on Count 1, Assault resulting in Serious Bodily Injury, and 60 months on Count II, Felony Child Abuse; sentences run concurrently); *see also US v. Scott*, Cause No. CR-19-30-GF-BMM, Amd. Judg. (D. Mont. Feb. 6, 2024)(Scott committed to BOP for 133 months on Count I, Aggravated Sexual Abuse, and 12 months on Count II, Assault by Striking, Beating, or Wounding; counts run concurrently).

Scott was subsequently advised that the stay would be lifted and if he wished to proceed, he would need to file an amended complaint. (Doc. 21.) Scott was further advised that the only Defendants remaining were: Overby, Furda, Lanthorne, John, and Knowlton. (*Id.* at 2.) Further, the only claims remaining were those alleging malicious prosecution, false statements, falsified evidence and/or corruption of the underlying criminal proceedings. *See (Id.* at 2-3); *see also,* (Doc. 19 at 3.) Scott was provided 60 days within which to file his amended complaint. On May 22, 2024, Scott complied. (Doc. 22.) For the reasons

explained herein, this matter will be dismissed.

### III. Scott's Claims

This Court previously summarized Scott's underlying claims as follows:

> Scott alleges that, beginning on July 7, 2017, tribal authorities- through "sho[dd]y [and] prejudicial investigation techniques and discriminatory charging and prosecuting decisions" – arrested and held him on rape and strangulation charges. (Doc. 2 at 6, 17.) although the tribal charges were ultimately dismissed, Scott asserts that they formed the basis of one of the federal charges he currently faces. (*Id*. at 6, 17.) In a separate matter arising from events that took place on the Fort Peck Indian Reservation in 2019, the United States charges Scott with Assault Resulting in Serious Bodily Injury and Felony Child Abuse. (*Id*. at 15; *see also United States v. Scott*, CR-19-29-GF-BMM (D. Mont. Apr. 19, 2019).) Invoking the Court's jurisdiction under U.S.C. § 1983 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), Scott alleges that Defendants committed constitutional and statutory violations against him at various points in the lives of these pending cases. Judge Johnston determined that, apart from Scott's allegations against three FBI agents and two Bureau of Indian Affairs ("BIA") employees, his allegations fail to state claims upon which relief may be granted.

(Doc. 13 at 2-3.)

In his amended complaint, Scott names Overby, Furda, Lanthorne, John, and Knowlton. (Doc. 22 at 1.) He also seeks to add as Defendants: Lewis Matthews, Kenny Trottier, Sean Redboy, Mike Bighorn, Lafonne Copenhaver, Scott Sciford, Coretta Grey Bear, and Johan Reidiger. The issue with the additional defendants Scott adds in his amended complaint, is that with the exception of Bighorn and Reidiger, these defendants were already dismissed from this action in a prior order. *See* (Doc. 13 at 7-9)(finding that Scott failed to state a claim under § 1983 or

4

*Bivens* against the named tribal defendants, including: Matthews, Trottier, Red Boy, Copenhaver, Grey Bear, and Sciford). Additionally, despite the Court's directive that he not add new claims or change the nature of his suit, Scott seeks to add two Plaintiffs to this matter, Carlo John Carrillo, and Luke John Scott, Jr., his sons. (Doc. 22 at 1.)

In his amended complaint, Scott again alleges the Defendants violated his rights in conjunction with the underlying criminal proceedings. Relying on *Bivens*, Scott alleges: all Defendants violated his Fourteenth Amendment rights during his criminal proceedings by depriving him of due process, engaging in reckless investigation, and using fabricated evidence, *see* Count I (*id.* at 12-16); that all Defendants maliciously prosecuted him in violation of the Fourth and Fourteenth Amendments, Count II (*id.* at 16-17); that Defendants Lanthorne, Matthews, Trottier, Redboy, Overby, Greybear, and Reidiger, violated his rights by preventing his release despite being actually innocent, Count V (*id.* at 21-22); that all defendants conspired to violate his rights under the Fourth, Fifth, and Fourteenth Amendments by acting in concert to secure his convictions, Count VI (*id.* at 22-24); and that all Defendants acted to effectuate his false imprisonment, Count VII (*id.* at 24-25).

Scott also seeks to add his two children, Carrillo and Scott, Jr. as plaintiffs. (*Id.* at 8.) He alleges: all Defendants interfered with his, and his children's, right to

intimate association in violation of the Fourteenth Amendment as a result of his wrongful incarceration, Count III (*id*. at 17-19); that Defendants' acts have resulted in the loss of familial companionship in violation of the Fourteenth Amendment, Count IV (*id*. at 19-21); all Defendants acted to negligently inflict emotional distress upon Scott and his sons as a result of unlawfully obtaining his wrongful conviction, Count IIX (*id.* at 25-26); all Defendants acted to intentionally inflict emotional distress upon Scott and his sons as a result of unlawfully obtaining his wrongful conviction, Count IX (*id*. at 26-27); all Defendants acted to destroy the existing parent-child relationship, resulting in a claim for loss of consortium for Scott and his sons, Count X (*id*. at 27); and all Defendants acted to violated Scott and his sons' rights under the Montana Constitution. Count XI (*Id*. at 27-29.)

Scott requests compensatory and punitive damages, an award of attorney's fees and costs, and any additional relief this Court deems just. (*Id*. at 29.)

## IV. Analysis

As explained herein, Scott's complaint must be dismissed for several reasons. He fails to state a claim against tribal defendants, he fails to state a cognizable claim for violation of his and his family's right to association and companionship, and his *Bivens* claims are barred by the doctrine set forth in *Heck v. Humphrey*. Finally, the Court declines to exercise supplemental jurisdiction over Scott's state law claims.

i.  **New Tribal Defendants**

As stated above, Scott seeks to add Mike Bighorn, a tribal prosecutor, and Jonah Reidiger, a tribal police officer, as Defendants in this matter. *See e.g.*, (Doc. 22 at 1, 9-10.) But this Court has previously explained that Scott cannot maintain a claim against tribal actors, as there is no indication they were acting under state law, as required to state a claim under § 1983, or acting under federal law, as required to maintain a *Bivens* claim. *See also*, (Doc. 13 at 8-9)(*citing Pistor v. Garcia*, 791 F. 3d 1104, 1114-15 (9th Cir. 2015) and *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971)). Scott fails to state a claim against Reidiger or Bighorn, accordingly these Defendants will be dismissed.

ii.  *Heck* **bar-Counts I, II, V, VI, and VII**

Scott's claims for damages are barred by *Heck v. Humphrey*. *See,* 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court held that if a judgment in favor of a plaintiff in a civil-rights action would necessarily imply the invalidity of his conviction or sentence, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has been invalidated. *Id*. at 486-87; *see also Smith v. City of Hemet*, 394 F. 3d 689, 695 (9th Cir. 2005)(en banc)("*Heck* says that 'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'"(citation omitted)). In

other words, a plaintiff seeking damages for the "very fact or duration of his confinement" has no claim under § 1983 "unless and until the [plaintiff] obtains favorable termination of a state, or federal habeas corpus, challenge to his conviction or sentence." *Nelson v. Campbell*, 541 U.S. 637, 646 (2004). Thus, the "relevant question" in a § 1983 suit is whether success would "'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence." *Smith*, 394 F. 3d at 695 (quoting *Heck*, 512 U.S. at 487). Generally, when *Heck* applies, the Court must dismiss the lawsuit. *See Edwards v. Balisok*, 520 U.S. 641, 649 (1997).

Civil rights actions against federal actors are authorized under *Bivens*, 403 U.S. 388. The rationale of *Heck v. Humphrey* pertaining to § 1983 actions applies as well to *Bivens* actions against federal actors. *See Martin v. Sias*, 88 F. 3d 774, 775 (9th Cir. 1996)("actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*.").

Scott's *Bivens* claims are barred by *Heck*. The claims for damages are premised on the alleged unconstitutionality of his underlying criminal investigation, convictions, and resulting sentences. As set forth above, his convictions have not been reversed, expunged, or declared invalid. Further, he has not been issued a writ of habeas corpus. Because Scott's claims here, if successful, would call into question his federal convictions, these claims are barred by *Heck* and will be dismissed.

### iii.    Familial Alienation Claims- Counts III & IV

Despite being advised he could not change the nature of his suit by adding new, unrelated claims in his amended complaint, Scott has done so.  In his amended complaint, Scott alleges that he had a liberty interest in parenting his children and maintaining a relationship with them, but the acts of Defendants prevented him from maintaining such a relationship. In particular, Scott points to his "wrongful incarceration," a result of which was removal of his children from the family home.  *See e.g.*, (Doc. 22 at 20.)

The Fourteenth Amendment protects against governmental deprivations of "life, liberty, or property" without due process of law.  U.S. Const. amend XIV § 1.  The procedural guarantees of the Fourteenth Amendment's Due Process Clause only apply when a constitutionally protected liberty or property interest is at stake.  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  Liberty interests protected by the Fourteenth Amendment may arise from either the Due Process Clause itself or from state law.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Liberty interest created under state law are generally limited to freedom from restraint which imposes an "atypical and significant hardship…in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

To succeed on a due process claim an individual must show that he was deprived of a protected liberty or property interest.  *See Bd. of Regents of State*

*College v. Roth*, 408 U.S. 564, 570-71 (1972). A procedural due process claim requires a protected liberty interest, a deprivation of that interest, and a lack of process. *See Portman v. Cty of Santa Clara*, 995 F. 2d 898, 904 (9th Cir. 1993). Vague and conclusory allegations of official participation in a violation is not sufficient to support a claim in a civil rights action. *Ivey v. Bd. of Regents*, 673 F. 2d 266 (9th Cir. 1982).

The Ninth Circuit has held that familial association and companionship is a liberty interest cognizable under the Fourteenth Amendment. *See Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F. 2d 321, 325 (9th Cir. 1991)(collecting cases). This constitutional interest protects "children from unwarranted state interference with their relationships with their parents." *Smith v. City of Fontana*, 818 F. 2d 1411, 1418 (9th Cir. 1987) (overruled on other grounds); *see also Crowe v. County of San Diego*, 608 F. 3d 406, 441 & n. 23 (9th Cir. 2010). Likewise, a parent's right to familial relationships with the child is co-extensive with the child's constitutional right under the Fourteenth Amendment. *Id*. (*citing Roberts v. United States Jaycees*, 468 U.S. 609, 619-20 (1984)).

A procedural due process claim may arise when the state interferes with that relationship for the purpose of furthering a legitimate state interest, such as removing a child from a parent's care. *Smith*, 818 F. 2d at 1419. But "where the best interest of the child arguably warrants termination of the parent's custodial

10

rights, the state may legitimately interfere so long as it provides 'fundamentally fair procedures.'" *Id.*

Scott claims in a general and conclusory manner that Defendants' collective actions resulted in the termination of his familial relationship with his children. There is little information regarding any formal tribal or state proceedings that either resulted in termination of his parental rights and/or removal of the children from the home. *See e.g.*, (Doc. 22 at 18-19.) Scott only provides that Carillo was "stolen" by state authorities and adopted into a non-Native American home, (*id*. at 11), while Scott Jr. "was in constant threat of being removed from his mother's care and placed into the same situation as [Carrillo]." (*Id*. at 12.)

The crux of Scott's familial alienation claims, like his *Bivens* claims, is that he was wrongfully incarcerated and convicted. Aside from his own self-serving statements of wrongdoing on the part of Defendants, Scott has not demonstrated he is actually innocent of the crimes of conviction. Moreover, Scott was taken into custody as a result of the charges and remains incarcerated due to his convictions. While the fact of his incarceration no doubt adversely affected his ability to parent, he has not established that he was denied fundamentally fair procedures relative to his sons' ultimate custody placements.

A government actor may not interfere with otherwise functional families simply because it thinks its interference is in a child's best interest. *See e.g., Troxel*

11

*v. Granville*, 530 U.S. 57, 68-9 (2000) ("so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for [the Government] to interject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children). By virtue of Scott's incarceration and subsequent federal convictions he was unable to adequately parent or care for his children. Thus, there was an adequate and necessary basis for interference in Scott's family situation. Or put another way, the government's interference with the familial relationship was warranted.  Scott fails to state a cognizable claim that Defendants violated his, or his sons', constitutional rights with regard to the familial relationship.  Theses claims will be dismissed.

    **iv.**    **State Law Claims- Counts IIX, IX, X, and XI**

Finally, Scott seeks recovery for pendant state law claims, on behalf of himself and his sons, for negligent infliction of emotional distress, intentional infliction of emotional distress, loss of consortium, and violations of the Montana constitution.  As explained above, Scott has failed to state cognizable claims and/or establish that his constitutional rights were violated; these claims are being dismissed.  Due to the dismissal of the claims for which original jurisdiction lies, the Court declines to exercise supplemental jurisdiction over Scott's state law claims.  *See*, 28 U.S.C. § 1367(c)(3).

## V.     Conclusion

28 U.S.C. §§ 1915 and 1915A require the dismissal of a complaint that fails to state a claim upon which relief may be granted but do not deprive the district court of its discretion to grant or deny leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The Court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d. at 1127 (*quoting Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (*citing Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

Scott has failed to state a claim upon which relief may be granted and his claims are barred by *Heck*. These defects could not be cured by further amendment; accordingly, granting additional leave to amend would be futile. This matter will be dismissed.

## VI.     "Strike" under 28 U.S.C. §1915(g)

The Prison Litigation Reform Act prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or failure to state a claim. 28 U.S.C. §1915(g). Scott has failed to state a claim upon which relief may

be granted and his pleadings are frivolous and present an "obvious bar to securing relief." *Washington v. Los Angeles County Sheriff's Department*, 833 F.3d 1048, 1055 (9th Cir. 2016)(*quoting ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014)).   The dismissal of this case will constitute a strike. *See* 28 U.S.C. §1915(g).

Based upon the foregoing, the Court issues the following:

**ORDER**

1.  This matter is DISMISSED. The Clerk of Court is directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2.  The Clerk of Court is directed to have the docket reflect, pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure, the Court certifies that any appeal of this decision would not be taken in good faith.

3.  The Clerk of Court is directed to have the docket reflect, pursuant to 28 U.S.C. § 1915(g),  that this dismissal counts as a strike because the Complaint fails to state a federal claim upon which relief may be granted.

DATED this 13th day of September, 2024.

*/s/ Dana L. Christensen*
Dana L. Christensen
United States District Court Judge